15 Fla. L. Weekly Supp. 1116b

**Contracts -- Credit card agreement -- Where cardholder did not sign credit card agreement, there is no written contract between bank and cardholder -- Choice of law provision in credit card agreement, which specifies Virginia law, is not controlling where agreement is not written contract -- However, under Florida borrowing statute, Virginia statute of limitations is applicable to breach of contract action because cause of action arose in Virginia, and Virginia statute of limitations for unwritten contracts is shorter than Florida's -- Account stated and money lent claims are also barred by Virginia statute of limitations**

CAPITAL ONE BANK (USA) NA, Plaintiff, v. ROBERT C. CUELLAR, Defendant. County Court, 13th Judicial Circuit in and for Hillsborough County, Civil Division. Case No. 07-CC-12751, Division M. September 8, 2008. Paul L. Huey, Judge. Counsel: Dennis M. Hudson, Jr., Tampa. Robert J. Orovitz, Law Offices of Hayt, Hayt & Landau, Miami.

*FINAL JUDGMENT*

THIS MATTER comes before the Court on an action filed by Plaintiff, CAPITAL ONE BANK (USA) NA to collect money damages on a credit card debt incurred by Defendant, ROBERT C. CUELLAR. Based on the record consisting of the allegations in the Plaintiff's complaint, Defendant's answer, the affidavits of record, and argument and briefing by parties' counsel, the Court FINDS, ADJUDGES, AND DECREES:

*FACTS*

The undisputed facts are as follows:

1. Plaintiff is a lending institution located in Virginia. Defendant is a permanent resident of the State of Florida.

2. Plaintiff issued Defendant a credit card with account number 4388XXXXXXXX0371. The date of the issuance of the card is not in the record.

3. Payments were made by Defendant to Plaintiff in Virginia, the last one on November 1, 2003.

4. The case was filed on May 7, 2007.

5. All payments by Defendant to Plaintiff pursuant to this account were directed to Plaintiff's P.O. Box in Virginia, the last one on November 1, 2003.

6. Plaintiff relies on a document it calls a Credit Card Holder Agreement "CCHA". The CCHA is not signed by either party and does not contain Defendant's name.

7. The CCHA provides, in part: "GOVERNING LAW: WE MAKE THE DECISION TO GRANT CREDIT, OPEN AN ACCOUNT AND ISSUE YOU A CREDIT CARD FROM OUR OFFICES IN VIRGINIA. The agreement is to be construed in accordance with the laws of the United States and the Commonwealth of Virginia without giving effect to any choice of law rule that would cause the application of the laws of any other jurisdiction."

8. The CCHA does not state that use of the credit card will bind the user to

**EXHIBIT A-6**

or any similar language. (As is typical, the CCHA is almost impossible to read because it appears to be a copy of a copy of a copy, etc. Thus, it is possible that the Court's efforts with a magnifying glass missed something. However, Plaintiff's counsel did not quote any such language in its complaint or affidavits.)

9. There is no copy of the credit card in the record.

10. Plaintiff claims damages pursuant to three legal theories: (1) Breach of Contract based on the CCHA, (2) Account Stated and (3) Money Lent.

11. Both parties have moved for summary judgment.

With these facts taken as true, we now turn to analysis of the applicable questions of law.

## DISCUSSION

This scenario arises everyday in Florida courts. The credit card industry has grown exponentially in the United States, resulting in agreements that are often hastily entered and insufficiently formalized or documented by the parties. Moreover, despite the advent of seemingly infinite computer database storage capabilities, necessary documents are not put in evidence. In the instant case, there was no evidence in the record of a signed writing confirming the terms of the agreement between Defendant and Plaintiff. As a result, the opportunity for uncertainty arises as to the status of this contract, *i.e.*, whether it be "written" or "unwritten?"

In essence, the only issue is whether Plaintiff's claims are barred under the applicable statutes of limitations because Cuellar does not dispute the amount of the debt. The answer requires an analysis of:

1. Whether the contract is "written" or "unwritten?"

2. Whether the statute of limitations is a "substantive" or "procedural" law?

3. Whether the law of Florida or some other state (Virginia) controls?

At the outset, it is important to observe that neither party provided any Florida Supreme Court or District Court of Appeal decisions supporting its or his position. Furthermore, Capital One, which has lawyers in every state, provided no trial or appellate case law from any other jurisdiction supporting its position that what is at issue constitutes a written contract.[1]

Defendant's motion argues that the dispositive issue in this case is the applicability of Florida's borrowing statute §95.10, *Florida Statutes*.[2] Defendant submits that the choice of law provision in the Plaintiff's exhibit manifests that the cause of action arose in Virginia and, therefore, Florida's borrowing statute causes Virginia's statute of limitations to control. Defendant goes on to argue that all of Plaintiff's claims fail because Virginia's three-year statute of limitations for unwritten contracts ran by the time of the filing of this suit on May 7, 2007. As will be explained below, Defendant is correct but for the wrong reason.

## IS THE CONTRACT WRITTEN OR UNWRITTEN?

Just because Plaintiff attaches and relies on a piece of paper, *i.e.*, the CCHA, does not mean that a piece of paper necessarily constitutes a written contract.[3] Rather, it may be just one of many pieces of

evidence pointing to the existence of a contractual relationship between the parties. *See, e.g., ARDC Corp. v. Hogan*, 656 So.2d 1371, 1374 (Fla. 4th DCA 1995). Here, to label the CCHA as a written contract because the Defendant simply used a credit card would be tantamount to finding that the parties agreed to infinitely indefinite terms, limited only to what the credit card company sought to enter into the record at trial. Therefore, the Court cannot recognize the status of a card agreement as a written contract without the tried and true type of evidence that the law and the business community expects under our system of jurisprudence.

Obviously, neither the parties nor the Court challenges the existence of a contractual relationship between Cuellar and Capital One. There is no doubt that Cuellar accepted the offer Capital One extended. The repeated payments by Cuellar to Capital One in Virginia testify that Cuellar accepted Capital One's offer by performance. "Acceptance by performance requires that at least part of what the offer requests be performed or tendered." Restatement (Second) of Contracts §50. However, the simple fact that Mr. Cuellar accepted the offer to enjoy a credit line with Capital One does not mandate a finding that the contract is "written" for statute of limitations purposes.

When faced with the question of whether a contractual relationship is "written" or "unwritten," the Court's eyes immediately search for a signature of the party to be charged. Although the inclination arises in part because of the Statute of Frauds (§§725-727, *Florida Statutes*), it stems more so from what humans have experienced since the beginning of deal making, from sealing promises with blood on papyrus, to official seals embossed in candle wax, from homemade inks and pigments to the writing pens we take for granted today. Evidentiary speaking, these signatures emitted confidence that the parties agreed to certain terms. In the alternative, the eyes search for the names of the parties. *See, e.g.* Restatement (Second) of Contracts §95, which implores that a written contract requires that both parties be named or so described as capable of identification. It is undisputed that neither is present here.

In their first week of law school, all law students learn that the universe of contracts is divided into subsets of "written" and "unwritten" contracts. (Eventually the law provided for equitable theories like *quantum meruit* to do justice on the fringes of contract law.) "Unwritten" encompasses "oral." For a statute of limitations analysis, it is not meaningful to argue that if the parties never spoke, *i.e.*, never created an "oral" contract, then it is axiomatic that the contract is "written." Rather, plaintiff has the burden to prove that there is a "written" contract, as defined by the law. Florida law has always required that if the parties expect an agreement to be in writing, it is not valid unless signed by all the parties. *See, e.g., Ocala Cooperage Co. v. Florida Cooperage Co.*, 52 So. 13, 16 (Fla. 1910) and *Rork v. Las Olas Co.*, 23 So.2d 839 (Fla. 1945). Accordingly, entry into the record of a cardholder's agreement or a CCHA is insufficient proof of mutual assent to terms under a contract. *See, Portfolio Recovery Associates, LLC. v. Fernandes*, 13 Fla. L. Weekly Supp. 560a (15th Jud. Cir. 2007). For reasons more carefully explained below, Defendant's use of his Capital One credit card -- *i.e.*, signing receipt slips and endorsing the card itself -- in no way manifests Defendant's assent to the specific terms of any agreement. The court finds the theory of this argument illogical, and adopts the reasoning in *Fernandes*.

Plaintiff has not produced a document manifesting legally binding mutual assent between the parties. The Court will not construe the Defendant's use of the card as constructive proof of a written agreement, especially when there is no proof that Cuellar agreed to that. The Court was provided with no case law that the use of the credit card -- an admittedly unwritten act -- serves in some magical way to convert an unwritten contract into a written contract. A few examples further illustrate this point. Cuellar puts credit card in gas pump to purchase gas. The transaction is consummated without the cardholder signing anything. Likewise, borrowing money through an ATM machine. These transactions are not "between" Cuellar and Capital One, but rather "between" Cuellar and the gas station owner and the bank, respectively.

From another perspective, when Cuellar hands the credit card to the waiter -- who does not work for, speak for, or negotiate for Capital One -- that is not a transaction "between" the cardholder and the card issuer. Rather, the waiter has Cuellar sign a receipt that is void of any relationship to Capital One. In light of this analysis, it is understandable why there are no District Court of Appeal decisions in Florida, or apparently in any other state, finding the situation at issue here to constitute a "written" agreement.

It is interesting to note that the Governing Law section of the CCHA states that an account has been opened, but not that a written contract has been entered into (not that such words would necessarily be controlling).

The Court distinguishes *Capital One v. Gelsey,* 15 Fla. L. Weekly Supp. 64a (4th Jud. Cir. 2007), which found in a credit card case that there is a "written" contract and, therefore, that a choice of law provision in the cardholder's agreement dictated the application of Virginia law to the adjudication of a collection case. In *Gelsey,* Defendant did sign the cardholder's agreement. In sum, the facts and the law are undisputed that there is no written contract between Capital One and Cuellar.

### IS THE STATUTE OF LIMITATIONS

### SUBSTANTIVE OR PROCEDURAL?

In contracts cases, conflict of laws analysis is used to resolve substantive issues involving rights and obligations of the parties. *See, e.g., Lumbermans Mutual Casualty Co. v. August,* 530 So.2d 293, 295 (Fla. 1988). However, if the disputed issue is one of procedural law, the Court can dispense with any formal conflict of laws analysis. Because this is a routine credit card collection case, application of the statute of limitations is a matter of purely procedural, not substantive, law. *See, Jones v. R.S. Jones and Associates, Inc.,* 431 S.E.2d 33 (Va. 1993), relying on *Davis v. Mills,* 194 U.S. 451 (1904). As Justice Holmes observed in *Davis v. Mills,* it is a long established rule that, where a suit arises under the laws of one jurisdiction but is filed in another jurisdiction, the statute of limitations from the forum state applies. Furthermore, "the ordinary limitations of actions are treated as laws of procedure, and as belonging to the *lex fori,* as affecting the remedy only, and not the right." *Id.*

Plaintiff's counsel argued, without any case authority, that Florida's borrowing statute is not procedural. Obviously, however, if §95.11 is procedural, as Plaintiff's counsel admits, so is §95.10.

As an aside, there is no legal basis for applying the "substantial relationship test" to a breach of contract action. In *Brown v. Case,* 80 So. 705, 707 (Fla. 1920), the Florida Supreme Court concluded that, because the statute of limitations affects the remedy of a claim and not the merits, "in the absence of a statute to the contrary, suits on a contract must be brought within the prescribed period by the law of the state where the suit is instituted, otherwise they will be barred." The court in *Brown* used the Florida statute of limitations to bar a claim under a promissory note executed in New York. *Id.*

An exception to this rule applies if, in the jurisdiction where the cause of action arose, the action sued upon has a remedy that carries with it a substantive right to a specific statute of limitations period. *See, e.g., Davis v. Mills,* 194 U.S. 451, 454 (1904) and *Jones v. R.S. Jones and Associates, Inc.,* 431 S.E.2d 33, 35 (Va. 1993). Virginia, where this cause of action arose, has no separate, specific statute of limitations for credit card collection cases.

Accordingly, application of the appropriate statute of limitations is a procedural issue.

### WHAT STATE'S LAW APPLIES?

In conflict of laws situations, matters of procedure are generally resolved by the law of the state where the action was filed. *See, e.g., Strauss v. Sillin,* 393 So.2d 1205, 1206 (Fla. 2d DCA 1981). ("Appellee argues that *Brown* no longer presents a valid rule because of the passage of time. We disagree. The rule presented in *Brown* has been relied on as recently as 1966 in *Aviation Credit Corp. v. Batchelor,* 190 So.2d 8 (Fla. 3d DCA 1966). It is currently followed by the majority of the courts in this country as is evidenced by Annot., 78 A.L.R.3d 639 (1977)").

Accordingly, this Court must apply the laws of Florida to resolve the effect of the statute of limitations on the case at bar.[4] Florida's borrowing statute, §95.10, *Florida Statutes,* provides:

> When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of the lapse of time, no action shall be maintained.

Florida's borrowing statute requires determination of: (1) Where the cause of action arose, and (2) the length of time specified in the possibly applicable statutes of limitations. As to the first issue, it is undisputed that the cause of action arose in Virginia because the failure to pay on a debt instrument creates a claim that arises in the place of the breach. *See, e.g., Aviation Credit Corp. v. Batchelor,* 190 So.2d 8, 11 (Fla. 3d DCA 1966). ("The failure to pay which created the cause of action occurred in Florida; therefore, the cause of action arose in Florida") and *Bank of Boston International, Miami v. Tefel,* 626 F.Supp 314 (E.D.N.Y. 1986) (where the U.S. District Court concluded that a cause of action to recover under a promissory note arose in Florida where the breach occurred, *i.e.*, where payments under a promissory note were due). Here, the account defaulted in Virginia, the jurisdiction where payments by Defendant on the account ceased in November 2003. Thus, the cause of action arose in Virginia for the purposes of borrowing statute analysis.

It is important to recognize that the Virginia statute of limitation applies not because the CCHA says it does, but because of the reasons set forth in the legal analysis set forth above. The Court is not being illogical by on the one hand finding that the CCHA's governing law provision is not controlling because there is no written contract, but on the other hand applying Virginia's statute of limitations. The significant issue for purposes of a statute of limitations defense is where the cause of action arose. Whether there is a signed contract identifying all the parties is irrelevant to that analysis (although it may very well be relevant to other issues, such as applicable interest rate, charging late fees, entitlement to attorney fees, etc).

As to the second issue, Virginia's statute of limitations for unwritten contracts is three years. *See,* §8.01.246(4), Virginia Code (2007). Florida's is four years. §95.11(k), FSA. Because Virginia's statute of limitations is shorter than Florida's, Virginia's three-year statute applies.

The Court further finds the policy rationale for the borrowing statute squarely applies here because "relieving potential defendants of uncertainty is one of the historical purposes of the statute of limitations." *See, Combs v. International Insurance Co.,* 334 F.3d 568, 590 (6th Cir. 2004). The borrowing statute "impedes forum shopping" by making it impossible to choose where to bring suit based upon which jurisdiction recognizes the longest statute of limitations. *Id.*

Accordingly, the Court finds that the arrangement between the parties constitutes an "unwritten" contract for purposes of the statute of limitations analysis, that Florida procedural law applies, that Florida procedural law, *i.e.*, borrowing statute, dictates that Virginia's shorter, three-year statute of limitations applies and application of the three-year statute mandates that Defendant prevails on its Motion for Summary Judgment on the breach of contract count.

CAPITAL ONE BANK (USA) NA, Plaintiff, v. ROBERT G. CUELLAR, Defendant. Co... Page 6 of 6

Case 9:09-cv-81357-KAM Document 10-6 Entered on FLSD Docket 02/20/2009 Page 6 of 6

## *ARE THE ACCOUNT STATED AND*

## *MONEY LENT CLAIMS TIME BARRED?*

The Court notes that the Virginia statute of limitations has also run with respect to Count II (account stated) and Count III (money lent). The analysis of the applicability of Florida's borrowing statute confirms that Virginia's statute of limitations applies to these claims. Therefore, the limitations period for both claims is at most three years. *See, Capital One v. Gelsey,* 15 Fla. L. Weekly Supp. 64a (where the two year "catch all" statute of limitations §8.01-248 or three year statute of limitations §8.01-248 were deemed to apply to account stated and money lent claims.) Thus, these claims are also time barred.

## *CONCLUSION*

The Court finds that all three counts are barred by Virginia's statute of limitations by application of the Florida borrowing statute.

WHEREFORE, Capital One's Motion for Rehearing is DENIED and the Order Granting Defendant's Motion for Summary Judgment dated June 20, 2008 is affirmed.

---

[1] As an aside, the Court observes that in our computer age we are all subjected to entering into all types of relationships involving computer software or use of computer databases where we mindlessly scroll through seemingly endless fine print on our computer screens until we hit the "accepted" bubble and then hurriedly move on to enjoy the latest helpful program, having no clue as to what we just agreed. The Court queries whether there is any helpful case law in that arena.

[2] Although many decisions have been written by Florida circuit and county courts relating to credit card collection issues, none cited to the Court deal with §95.10.

[3] Plaintiff's evidence of the terms of the agreement -- the CCHA -- is dated 2005, two years after Defendant defaulted on the card. Obviously, Cuellar never agreed to that document. The Court declines to quickly dismiss on that basis, because such would miss the true issues addressed herein.

[4] The Court notes that *Capital One Bank v. Tarpinian,* Case No. 08-SC749 (Fla. 15th Cir. 2008) [15 Fla. L. Weekly Supp. 856a] does not address Florida's borrowing statutes, without explanation. Also, it is unclear were the judge found factual support for the statement in subpart B that by using a credit card and signing it (no fact of that here) the user has agreed to the terms of a written contract. The Court also observes that the decision in *Pescatrice v. Orovitz, P.A.,* Case No. 07-60653-CIV-COHN (United States District Court, S.D. Fl. 2008) contains absolutely no legal analysis to support the statement made in footnote 1.

\* \* \*